NAME  Armando Morales

PRISON NUMBER  P80673

CURRENT ADDRESS OR PLACE OF CONFINEMENT  Corcoran State Prison PO BOX 3481

CITY, STATE, ZIP CODE  Corcoran CA. 93212

**FILED**

APR 1 6 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

2254 ___ 1983
FILING FEE PAID
Yes ___ No ✓
IFP MOTION FILED
Yes ___ No ✓
COPIES SENT TO
Court ✓ Pro se ___

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

(FULL NAME OF PETITIONER)
ARMANDO MORALES          PETITIONER

v.

(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

DARREL ADAMS , Warden. RESPONDENT
and

The Attorney General of the State of
California, Additional Respondent.

Civil No. _____ '08 CV 0705 JAH PCL

(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

**PETITION FOR WRIT OF HABEAS CORPUS**

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack:
   Superior Court of Imperial County.

2. Date of judgment of conviction: May 12th, 2004

3. Trial court case number of the judgment of conviction being challenged: CF12094

4. Length of sentence: 28 to Life

CIV 68 (Rev. Dec. 1998)                    ::ODMA\PCDOCS\WORDPERFECT\22833\1

1

5. Sentence start date and projected release date: Starts 2009 - Earliest Release 2039

6. Offense(s) for which you were convicted or pleaded guilty (all counts):
   COUNT 1. Assault By A Prisoner With A Deadly Weapon and By Means of Force Likely To Produce Great Bodily Injury;
   COUNT 2. Assault On A Peace Officer With A Deadly Weapon or Force Likely To Produce Great Bodily Injury; and enhancement of Great Bodily Injury.

7. What was your plea? (CHECK ONE)
   (a) Not guilty ☑
   (b) Guilty ☐
   (c) Nolo contendere ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a) Jury ☑
   (b) Judge only ☐

9. Did you testify at the trial?
   ☑ Yes ☐ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    ☑ Yes ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:
    (a) Result: DENIED - CONVICTION AFFIRMED.
    (b) Date of result, case number and citation, if known: Date of Result: June 13th, 2005
        Case Number: D044560

    (c) Grounds raised on direct appeal:
        (1) Trial Court Erred in Sentencing Appellant to Concurrent terms for the offenses of Assault By A Prisoner and Assault Upon A Peace Officer.
        (2) Trial Court Erred in Denying Appellants Motion To Strike The Prior Strike Allegation.

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
    (a) Result: DENIED - CONVICTION AFFIRMED.
    (b) Date of result, case number and citation, if known: Date of Result: August 31st, 2005
        Case Number: 5135813

    (c) Grounds raised: Same As On Direct Appeal.

13. If you filed a petition for certiorari in the <u>United States Supreme Court</u>, please answer the following with respect to that petition:

    (a) Result:  N/A

    (b) Date of result, case number and citation, if known:  N/A

    (c) Grounds raised:  N/A

<u>**COLLATERAL REVIEW IN STATE COURT**</u>

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Superior Court</u>?
☑Yes ☐No

15. If your answer to #14 was "Yes," give the following information:

    (a) <u>California Superior Court</u> Case Number: EHC 00801

    (b) Nature of proceeding: Writ of Habeas Corpus Petition

    (c) Grounds raised: Same As Instant Petition

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes ☑No

    (e) Result: ~~N/A~~ CONVICTION AFFIRMED / PETITION DENIED

    (f) Date of result: ~~N/A~~ 12/15/06

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Court of Appeal</u>?
☑Yes ☐No

CIV 68 (Rev. Dec. 1998)

::ODMA\PCDOCS\WORDPERFECT\22833\1

17. If your answer to #16 was "Yes," give the following information:
    (a) <u>California Court of Appeal</u> Case Number: __D050319__
    (b) Nature of proceeding: __Writ of Habeas Corpus Petition__

    (c) Grounds raised:
        __Same As Instant Petition__

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
        □ Yes ☑ No
    (e) Result: __N/A CONVICTION AFFIRMED / PETITION DENIED__
    (f) Date of result: __N/A 7/27/07__

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Supreme Court</u>?
☑ Yes □ No

19. If your answer to #18 was "Yes," give the following information:
    (a) <u>California Supreme Court</u> Case Number: __S155801__
    (b) Nature of proceeding: __Writ of Habeas Corpus Petition__

    (c) Grounds raised:
        __Same As Instant Petition__

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
        □ Yes ☑ No
    (e) Result: __N/A CONVICTION AFFIRMED / PETITION DENIED ON MERITS__
    (f) Date of result: __N/A 3/12/08 (SEE EX "T" Order Denying Habeas Corpus)__

4

20. If you did **not** file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the <u>California Supreme Court</u>, containing the grounds raised in this federal Petition, explain briefly why you did not:

N/A

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
☑ Yes ☐ No     (IF "YES" SKIP TO #22)
   (a) If no, in what federal court was the prior action filed?
      (i) What was the prior case number? _____ N/A _____
      (ii) Was the prior action (CHECK ONE):
         ☐ Denied on the merits?
         ☐ Dismissed for procedural reasons?
      (iii) Date of decision: _____ N/A _____
   (b) Were any of the issues in this current petition also raised in the prior federal petition?
      ☐ Yes ☐ No
   (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
      ☐ Yes ☐ No

---

<u>CAUTION:</u>
- **<u>Exhaustion of State Court Remedies:</u>** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present **all** other grounds to the California Supreme Court before raising them in your federal Petition.

- **<u>Single Petition:</u>** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **<u>Factual Specificity:</u>** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

---

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States.  Summarize *briefly* the facts supporting each ground.  If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: The Prosecutions Intentional Intrusion Into The Attorney-Client Relationship Violated Petitioner's Rights Under The Sixth And Fourteenth Amendments To The U.S. Constitution And Article 1 Sections 7 And 15 Of The California Constitution.

Supporting FACTS (state *briefly* without citing cases or law)

1. THE PROSECUTORIAL MISCONDUCT IN THIS CASE VIOLATED PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND A FAIR TRIAL.

A. FACTS PERTAINING TO PETITIONER'S CONFIDENTIAL COMMUNICATION TO HIS ATTORNEY.

2. During the prosecution's case in chief, Petitioner's Attorney Thomas Storey brought up the issue of Petitioner testifying on his own behalf. Petitioner asked Mr. Storey for his advice on the matter as he was unfamiliar with how these things worked. (See exhibit (ex) "A" Declaration (Dec.) of Armando Morales (Morales) at page (p.) 1, paragraph (para) 2. attached hereto.)

3. Mr. Storey informed Petitioner that he could not properly advise him until he knew exactly what had occured. However, Mr. Storey said that he did not have time to visit him again, and instructed Petitioner to write him a letter explaining what had occurred and send it to him via Confidential legal mail. (Ex. "A" Dec. of Morales at p.1; para 3).

4. That same night in his prison cell, Petitioner wrote a two (2) page letter to Mr. Storey fully disclosing all the circumstances surrounding this incident, along with a defense theory. He also asked Mr. Storey for his advice on whether or not Petitioner should testify. Petitioner placed this document in a blank white envelope and addressed it to: "Thomas Storey Esq." with the words, "Confidential Attorney-Client Communication". (Dec. of Morales at p.1, para 4.)

Did you raise **GROUND ONE** in the California Supreme Court?
☑ Yes ☐ No.

5. Petitioner took the communication with him to court the next day to give to Mr. Storey. Petitioner handed the confidential letter to the correctional officers (c.o.'s) whom transported him that day in order to be inspected for contraband. Upon arriving to the court, the C.O. gave Petitioners' attorney letter to the baliff, who in turn delivered it to Mr. Storey (Dec. of Morales at P.1, para 5.)

6. In the courtroom Petitioner explained to Mr. Storey that everything he needed to know about the case was in the letter that the baliff handed him. Mr. Storey stated: "Perfect, I'll read it later." (Dec. of Morales at p.2, Para 6.).

**B. FACTS PERTAINING TO THE PROSECUTION'S INTENTIONAL INTRUSION INTO THE ATTORNEY-CLIENT RELATIONSHIP AND USE OF CONFIDENTIAL COMMUNICATIONS**

7. The following day, Mr. Storey told Petitioner in the courtroom that he read Petitioners' letter and that he would prepare him if he chose to testify, which Mr. Storey thought would be a good idea. Petitioner decided to testify. (Dec. of Morales at p.2, para. 7.).

8. Before the judge entered the courtroom, both Petitioner and Mr. Storey were preparing for Petitioner to testify. This required discussing the incident, strategy, observing how Petitioner would answer Mr. Storey's questions, and reviewing the incident reports as well as the letter Petitioner wrote to Mr. Storey. (Dec. of Morales at. P.2, para 8.)

9. While this was going on, the prosecutor was about four (4) feet away from them, sitting behind the prosecution side of the table apparently listening to Petitioners' conversation with his attorney and was caught glancing in their direction from time to time. (Dec. of Morales at p.2, para. 9.)

10. Later on that same day, Petitioner took the stand in his own defense. During cross-examination by the prosecutor, Petitioner was ambushed. The prosecutor questioned Petitioner about the communication he wrote Mr. Storey in confidence about the case. Petitioner immediately told the prosecutor that was "confidential information that I was sharing with my attorney." (RT 618, attached hereto as Ex "B"; see also Dec. of Morales at p.3, para 10.)

11. After an unreported side bar, the prosecutor had possession of Petitioner's written communication to his attorney that he wrote in confidence. The prosecutor used the document to impeach Petitioner during cross-examination. (see RT 620-625 attached hereto as Ex "C", see also Dec. of Morales at p.3, para 11.)

12. Further, during the prosecutor's closing argument and rebuttal argument, he made repeated reference to Petitioners written communication to his attorney in order to show the jury that prosecution eye-witness Don Davis was more credible than Petitioner.[1] (see RT 718, 723-25, 748-49 attached hereto as EX "D".)

13. In the Notice of Appeal, Mr. Storey raised "Prosecutorial Misconduct" as an issue to be argued on direct appeal. (clerks notes 000162)

14. Petitioner hand delivered his written statement to his attorney rather than mailing it because prison officials were tampering with his mail – including confidential legal mail. (Dec. of Morales at p.3, para 14; see also EX "E" CDC 602 Appeals re: Mail Tampering.

---

1. The prosecutions key eye-witness himself had serious credibility issues. (see ground 3.)

15. The prosecutors intentional intrusion into the attorney-client relationship in this case, and his use of confidential communications obtained by that intrusion at Petitioners trial prejudiced Petitioner and requires reversal.

**(b)** **GROUND TWO**: TRIAL COUNSELS FAILURE TO PRESERVE THE ATTORNEY-CLIENT PRIVELEGE AND OBJECT TO THE PROSECUTORS MISCONDUCT DENIED PETITIONER EFFECTIVE ASSISTANCE OF COUNSEL AND A FAIR TRIAL.

**Supporting FACTS** (state *briefly* without citing cases or law):

1. In this case, Attorney Thomas Storey betrayed Petitioner and the legal Profession.

2. Petitioner repeats those facts in support of Ground 1. in support of this Ground.

3. Petitioner trusted his attorney Thomas Storey. That is why he freely disclosed to him everything about this case. Petitioner believed his written communication to Mr. Storey would remain confidential. (Dec. of Morales at p. 3, para. 13.)

4. After petitioner testified, and after being impeached by the prosecutor, Petitioner asked Mr. Storey how the prosecutor knew of the letter he wrote to him and how he obtained possession of it. Mr. Storey told Petitioner that the prosecutor overheard their conversation and that the judge forced him to turn it over to the prosecutor. (Dec. of Morales at p. 3, para 12.)

5. Mr. Storey's representation to Petitioner, that the judge "forced" him to turn it over (Petitioners' letter) is untrue.

6. After an unreported side bar, a brief discussion between the court, Mr. Storey, and the prosecutor took place:

COURT: "When we discussed this issue at sidebar, Mr. Storey distinguished two sorts of paperwork. One was apparently a narrative WRITTEN BY HIS CLIENT OF WHAT OCCURED... and Mr. Storey AGREED ... that the prosecutor is entitled to review that."

MR. STOREY: "Correct"

PROSECUTOR: "Your Honor, I am satisfied with Mr. Storey's representations."

COURT: "Then we'll give you an opportunity to review that".

(RT 619-620 attached hereto as EX "C".)

Did you raise <u>GROUND TWO</u> in the California Supreme Court?
☑ Yes ☐ No.

7. After this conversation between the court, Mr. Storey, and the prosecutor, the prosecution had possession of Petitioners communication that he wrote his attorney in confidence, and went on to impeach him with it. (See Ground 1. para. 11 and 12.)

8. During his closing argument to the jury, Mr. Storey described Petitioners' communication as a: "WRITTEN STATEMENT TO ME THAT THE D.A. WAS ABLE TO GO THROUGH." (RT 738, attached hereto as EX "F").

9. In his rebuttal argument, the prosecutor denied Knowing of the existence of Petitioners letter "until the court ordered it turned over." [2] (RT 748-49 attached hereto as Ex "D").

10. The representations by Mr. Storey and the prosecutor in paragraphs 8 and 9 are misleading. The court never "ordered" Petitioners letter to his attorney "turned over" to the D.A.. The reason the "D.A. was able to go through" Petitioners written communication was because Mr. Storey "Agreed... that the prosecutor" was "entitled to review" it. (RT 619.)

11. Mr. Storey's failure to object to the Prosecutors intentional intrusion into the attorney-client relationship and his failure to preserve the attorney-client privilege betrayed Petitioners confidence and violated his constitutional rights to the effective assistance of counsel and a fair trial. Mr. Storey's breach of the attorney-client privilege and failure to object to the prosecutors misconduct prejudiced Petitioner.

---

2. This denial is undermined by the record. During cross-examination of Petitioner, the prosecutor specifically questioned Petitioner about the communication prior to this issue being brought to the courts attention. (RT 618).

**(c) GROUND THREE**: TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO IMPEACH PROSECUTION KEY WITNESS DON DAVIS AND BY FAILING TO PRESENT EVIDENCE OF ANOTHER SUSPECT THAT THREATENED VICTIM C.O. RHOADS WITH PHYSICAL VIOLENCE.

**Supporting FACTS** (state *briefly* without citing cases or law):

1. Officer Don Davis was the only eye-witness that allegedly saw Petitioner strike prison guard Rhoads. In fact, in regards to impeachment issues, the trial judge said it best:

"The only one who actually saw the blow struck is Officer Don Davis... and therefore, he is a critical witness. And issues that arise out of his testimony, I think are, therefore, elevated to a higher level."

(RT 658)

**A. FACTS PERTAINING TO CREDIBILITY ISSUES DURING DON DAVIS' TRIAL TESTIMONY.**

2. There were serious issues related to Davis' testimony. First it must be noted that prison guard Davis did not know Petitioner prior to this incident and testified that Petitioner was wearing a blue shirt and blue Levis (RT 549, 487). However, Officer Francisco Guittierez testified that Petitioner was wearing shorts. (RT 565).

3. Further, Davis testified that when Petitioner struck Rhoads, he took a few steps going towards the stairs. (RT 481- 490). However, Officer Holmes testified that Davis told him, "inmate Morales struck Officer Rhoads and stood over him while ignoring orders to get down." (RT 673, 687- 689).

4. Furthermore and more disturbing, is the fact that the Rules Violation Report regarding this incident was falsified. Davis was the "Reporting Employee" in this case. However, Davis testified that he did not author the CDC 115 Rules Violation Report (RVR), even though defense counsel confronted him with the report that had Davis' name and signature on it. (RT 550). Davis claimed that he did not know who prepared the report. (RT 550). However, Correctional Sgt. McWilliams testified that Davis in fact did prepare the RVR CDC 115. (RT 589). Specifically, Sgt. McWilliams testified, "so, yes, he did prepare his report if his name is on there." (RT. 590). And that the Narrative Section of the 115 is prepared by the Reporting Employee, (i.e. Davis.) (RT. 590).

Did you raise **GROUND THREE** in the California Supreme Court?

☑ Yes ☐ No.

5. The CDC 115 in this case severely contradicts Davis' trial testimony. (see Ex "G" RVR dated 3/5/02 authored by Don Davis, Reporting Employee). Moreover, there is a second RVR 115 authored by Davis and dated 7/23/02. This second 115 is a carbon copy of the first RVR that Davis denied writing. The only difference is that the charge was reduced from attempted murder to battery. (see Ex. "H" second RVR also authored and signed by Davis.)

6. What this proves is either Davis committed perjury, or investigative staff involved in this incident falsified the reports, a crime under California law. (see penal code section 134 and 141 (B). It also proves forgery if Davis was telling the truth, another crime. (Penal Code 470). One of these occured and as such, Petitioners' conviction is tainted.

7. The above contradictions and discrepancies in Davis' testimony are likely what prompted the jury to request read back of C.O. Davis, Holmes, and Gutierrez on two (2) seperate occassions.

8. The first read back request was on March 11th, 2004 at 4:25 p.m.; Davis' and Holmes' testimony was re-read to the jury. (see Ex "I" Jury note attached hereto).

9. The second jury request was on March 12th, 2004 at 9:50 a.m.: Davis' and Gutierrez' testimony was re-read to the jury. (see Ex "J" Jury note attached hereto).[1]

---

1. The jury also requested the read back of Petitioners' and C.O. Rhoads testimony (clerks Transcripts 3, 5).

**B. FACTS PERTAINING TO COUNSELS FAILURE TO IMPEACH DON DAVIS.**

10. Besides the flaws in Davis' testimony, counsel Storey failed to impeach him further in the following manner.

11. Davis was recalled to the stand by attorney Storey and testified that he never told anyone that Rhoads struck the podium with the right side of his face, nor that Petitioner approached Rhoads from behind. (RT 550-551). However, in an Investigative Employee (I.E.) report authored by Officer Holmes, Holmes wrote in pertinent part: "Reporting Employee's Statement:[2] On 2/23/02 at approximately 2005 hours, during the 2000 Yard inline, Inmate Morales approached Officer Rhoads from behind ... and struck Officer Rhoads in the right facial area with a closed fist. Officer Rhoads fell at an angle, from right to left, striking the edge of the podium with his face ... Inmate Morales stood over Officer Rhoads." (see Ex "K" I.E. Report authored by C.O. Holmes.).

12. Even though this report seriously undermines Davis' testimony, trial counsel failed to impeach him with it, even when Holmes was on the stand and opportunity was present.

13. Further, Davis testified that he did not prepare the 115 RVR, and that he did not know who did. (RT 550). However, in a report authored by correctional Lieutenant T.L. Martinez; LT. Martinez found Petitioner "guilty" of Battery on C.O. Rhoads at a disciplinary hearing. In the "findings" portion LT. Martinez relied on the following in rendering his decision: "The Rules Violation Report written by correctional officer

---

2. In a hearing outside the presense of the jury, Holmes confirmed he spoke to Davis:
STOREY: "What Im asking you is, did you discuss that reporting ... one second ... Reporting Employees Statment with Officer Davis?"
HOLMES: "I discussed it. Officer Davis saw the report, Officer Davis told me what happened and I put that part in the Employee Report." (RT 670-671).

D. Davis which states in part; 'On Saturday, February 23rd 2002 at approximately 2005 hours, Inmate Morales approached Officer Rhoads from behind as he sat by the podium and struck officer Rhoads in the right facial area with closed fists. Officer Rhoads fell at an angle, from right to left, striking the edge of the podium with his face... Inmate Morales then stood over Officer Rhoads and watched him as he laid on the ground." 3| (EX"L")

14. This report by LT. Martinez seriously undermines Davis' testimony that he did not write the 115 Rules Violation Report. Yet, counsel failed to impeach Davis by failing to call LT. Martinez to the stand.

15. Furthermore, in an I.E. Report authored by I.E. A. Verkouteren (Investigative Employee (I.E.) for Inmate Gonzalez H55379). Verkouteren wrote that Davis told him that while Petitioner was being counselled by C.O. Rhoads, he heard threats directed to Rhoads (See EX "M" I.E. Report by Verkouteren.). However, in the I.E. Report authored by Holmes, Davis denied making such statements to I.E. Verkouteren. (See EX "N" I.E. Report by Holmes). Counsel failed however, to impeach Davis with his inconsistent statements.

C. FACTS PERTAINING TO COUNSELS FAILURE TO INTRODUCE EVIDENCE OF ANOTHER SUSPECT THAT PERSONALLY THREATENED RHOADS WITH PHYSICAL HARM.

16. Finally, attorney Storey failed to present evidence that another prisoner threatened Rhoads with physical harm prior to Rhoads being assaulted.

17. According to a memorandum authored by LT. G.N. Granish, C.O. E. Romero alleged that an Inmate Gonzalez H55379 made

3. LT. Martinez also relied on Davis' statement to I.E. Holmes. (See Ex. "L"). In that statement, Davis basically repeated what is contained in the 115. (see also para. 11.)

threatening remarks of physical harm to Rhoads after he had
verbally counselled Petitioner. (See EX "O" memo). Further, the
memo goes on to state that Rhoads stated that after he counselled
Petitioner, Petitioner was "receptive". However, while Petit-
ioner was being counselled, Gonzalez, also the Mexican Representative,
approached Rhoads stating: "What are you doing to my people? Why are you
disrespecting my race?" Rhoads ordered Petitioner to go to his cell.
Gonzalez walked up to Rhoads and said, "If you don't leave him
alone, you will get hit" (ID).

18. Despite this evidence that another prisoner threatened
Rhoads with physical harm, counsel failed to present it. This
prejudiced Petitioner because Petitioner had no motive to assault
Rhoads. In fact, Petitioner was set to parole in less than two
years when the incident took place. Gonzalez, by his statements,
obviously did have motive, which counsel failed to explore.

19. Counsel's failure to impeach Davis and failure to
investigate and present evidence of another possible suspect
that may have assaulted Rhoads constitutes ineffective
assistance.

16

**(d) GROUND FOUR:** THE LOWER COURTS VIOLATED PETITIONER'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT BY FAILING TO ISSUE AN ORDER-TO-SHOW-CAUSE PURSUANT TO CALIFORNIA RULES OF COURT; RULE 4.551 (a) (3).

**Supporting FACTS** (state *briefly* without citing cases or law):

1. On October 17th, 2006, Court clerk Veronica Lopez filed Petitioners Habeas Corpus Petition to presiding judge Jones of the Imperial County Superior Court. (See Ex "P" Acceptance and Filing of Writ of Habeas Corpus Petition.)

2. Pursuant to California Rules of Court, Rule 4.551 (a) (3) the court must rule on a petition within 30 days after the petition is filed. If this time limit is violated, an order to show cause will be deemed to have issued.

3. The Imperial County Superior Court violated the mandate of California Rules of Court, Rule 4.551 (a) (3) by not ruling on the petition for habeas corpus within thirty (30) days. In fact, the court did not issue a ruling until December 15th, 2006, approximately fifty-nine (59) days after it was filed, twenty-nine (29) days over the time constraints. (See Ex. "Q" Order Denying Petition for Writ of Habeas Corpus.)
Nor did the court issue an order to show cause as was required for violating the thirty (30) day time limit. Instead the court found the Petition timely filed and denied Grounds 1 and 2 on the merits. (Id. at p. 1.)

4. On February 21st, 2007 the clerk of the California Court of Appeal, Fourth Appellate District, Division One, informed Petitioner that his habeas petition was filed on Feb. 20th, 2007 (See Ex "R" Clerks letter dated 2/21/07).

Did you raise <u>GROUND FOUR</u> in the California Supreme Court?
☑ Yes ☐ No.

5. Ninety-three (93) days later, on May 24th, 2007 the Court of Appeal asked the Attorney General to file an Informal Response to the petition for habeas corpus. (see, Ex "S". letter dated May 24th, 2007).

6. The lower courts violation of California Rules of Court rule 4.551 (a) (3) amounted to a violation of Petitioner's state and federal due process rights and for that reason, petitioner is entitled to relief.

(d) GROUND FIVE : PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.


Supporting Facts:

1. Appellate Counsel rendered ineffective assistance by failing to raise Grounds 1 and 2. on direct appeal denying Petitioner meaningful appellate review.

2. There is no tactical decision on Appellate Counsels part, as Grounds 1 and 2. find support in the Reporters Transcripts and Petitioner wrote counsel explaining to her the relevant facts pertaining to Grounds 1 and 2, and asked for her opinion of these, rather they were appealable grounds. Appellate Counsel stated they were not and proceeded to raise meritless issues.

3. Accordingly, counsels failure to argue Grounds 1. and 2. on direct appeal was ineffective assistance and denied Petitioner Due Process and Equal Protection.

Did You raise GROUND FIVE in the California Supreme Court?
☑ Yes   ☐ No

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes ☑ No

24. If your answer to #23 is "Yes," give the following information:

    (a) Name of Court: ___N/A___

    (b) Case Number: ___N/A___

    (c) Date action filed: ___N/A___

    (d) Nature of proceeding: ___N/A___

    (e) Grounds raised:

        N/A

    (f) Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes ☑ No N/A

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a) At preliminary hearing: Thomas Storey 654 Main Street, El Centro CA. 92243-2920

    (b) At arraignment and plea: Same as above

    (c) At trial: Same as above

    (d) At sentencing: Same as above

    (e) On appeal: Patricia Ann Scott P.O. Box 83087 San Diego CA. 92138-3087

    (f) In any post-conviction proceeding: N/A

    (g) On appeal from any adverse ruling in a post-conviction proceeding: N/A

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☑Yes ☐ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐Yes ☑No

   (a) If so, give name and location of court that imposed sentence to be served in the future:
     N/A

   (b) Give date and length of the future sentence: _____ N/A

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
     ☐ Yes ☐ No  N/A

28. Date you are mailing (or handing to a correctional officer) this Petition to this court:
_____ April 9th, 2008 _____

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____
SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_____ 3/31/08 _____          _____ Armando Morales _____
(DATE)                               SIGNATURE OF PETITIONER

CIV 68 (Rev. Dec. 1998)

::ODMA\PCDOCS\WORDPERFECT\22833\1

EXHIBIT   A

DECLARATION OF ARMANDO MORALES

I, Armando Morales, do hereby declare:

1. I am the Petitioner of this action over the age of eighteen (18) and competent to testify. I make this declaration in support of my petition for writ of habeas corpus.

2. During the prosecutions case in chief, my attorney Thomas Storey brought up the possibility of me testifying. I asked for his opinion of whether or not I should testify.

3. Mr. Storey informed me that he could not properly advise me until he knew exactly what had occured. However, he said that he did not have time to visit me again and asked that I write out in full detail what exactly had happened and any thoughts or theories I had in mind. He instructed me to mail it to him via confidential legal mail

4. That same night in my prison cell, I wrote a two (2) page letter to Mr. Storey fully disclosing all the circumstances surrounding this incident along with my defense theory, and asked Mr. Storey for his advice on whether or not I should testify. I placed this written communication in a blank white envelope, and addressed it to "Thomas Storey Esq." with the words "confidential Attorney-Client Communication."

5. The next day, I took the letter to court to give to my attorney. I gave the letter to the correctional officers (C.O.'s) transporting me for them to inspect it for contraband. When I arrived at court, the C.O. handed my confidential letter to the baliff who in turn gave it to Mr. Storey.

1

6. In the courtroom, I explained to Mr. Storey that everything he needed to know from me was in the letter that the baliff handed to him. Mr. Storey stated, "Perfect, I will read it later."

7. The following day, Mr. Storey told me that he had read the letter, and that he could prepare me if I chose to testify, which he thought would be a good idea. So I decided to testify. We also discussed the pro's and con's of the defense theories which I had wrote Mr. Storey in the letter.

8. Before the judge entered the courtroom, both Mr. Storey and I were preparing for my testimony. This required discussing the incident, strategy, observing how I would answer questions posed by Mr. Storey, and reviewing all of the incident reports as well as the written communication to Mr. Storey from me.

9. While Mr. Storey and I were preparing for my testimony and defense strategy, the prosecutor was about four (4) feet away from us, sitting behind the prosecutions side of the table, apparently listening to my conversation with Mr. Storey and glancing towards our direction from time to time.

10. Later that day, I took the stand in my own defense. During cross-examination I was ambushed by the prosecutor. He questioned me about the letter I wrote Mr. Storey in confidence about my case. I immediately told the prosecutor that that was "confidential information that I was sharing with my attorney".

2.

11. After a side-bar the prosecution had possession of my written communication to my attorney that I wrote him in confidence to seek legal counsel. The prosecutor used my confidential communication to my attorney to impeach me during cross-examination.

12. After I testified, I asked Mr. Storey how the prosecutor knew about my confidential letter to him and how he obtained possession of it. Mr. Storey informed me that the prosecutor had overheard our conversation and the judge forced him to turn it over to the D.A.

13. I trusted my attorney Thomas Storey, that is why I freely disclosed to him everything about my case. I believed my written communication to him would remain confidential.

14. The reason I hand delivered my confidential letter to Mr. Storey instead of mailing it was because prison officials at Centinela State Prison were tampering with my mail, including confidential legal mail. I wanted to make sure he got it and that it remained between us.

15. If necessary, I will be willing to testify to the fore-going facts.

16. I declare under penalty of perjury that the afore-mentioned is true and correct to the best of my knowledge.

Dated. 3/31/08

Armando Morales
Armando Morales
Declarant / Petitioner
In Pro Se.

3

EXHIBIT 8

COPY

1      A.    No, sir, I did not.

2      Q.    The first time you testified, Mr. Storey asked you, you

3  said you went that way?

4      A.    I went to the C side of the dayroom.  That is the

5  Hispanic and White side of the dayroom.

6      Q.    Before you testified today, as you are sitting here

7  today, did you review any documents before you testified to aid

8  you in your testimony?

9      A.    Not to aid me, just to be prepared.  Yes, I did.  I

10  looked at the reports that -- the officer's report.

11      Q.    And something else, too, right?

12      A.    No.

13      Q.    Nothing handwritten?

14      A.    I had my personal paperwork that I was sharing with my

15  attorney.

16      Q.    What I'm asking you, sir, if you reviewed any documents

17  today prior to your testimony other than police reports?

18      A.    My handwritten material that I wrote myself, yes.

19      Q.    What was that?

20      A.    That was confidential information that I was sharing

21  with my attorney.

22          MR. BAKER:  Your Honor, may we approach?

23          THE COURT:  Yes.

24          (Unreported side bar was held.)

25          THE COURT:  Ladies and gentlemen, you heard about a

618

EXHIBIT C

COPY

1    document that Mr. Morales referred to in refreshing his

2    recollection.  We're going to be in brief recess to allow the

3    prosecutor to have a chance to review that and then we'll be back

4    in session.  So that should be five to ten minutes at the most.

5             You remember when we were involved in jury selection, I

6    said I would do my best not to inconvenience you, but the way

7    trials work, it is necessary occasionally to do things like this.

8    And I appreciate your patience and understanding.

9             Please don't form or express any opinions regarding this

10   case or discuss this matter among yourselves or with anyone else

11   until it's finally submitted to you.  We'll see you back here in

12   five to ten minutes I would expect.

13             (Recess.)

14             (The following proceedings were held out

15             of the presence and hearing of the jury:)

16             THE COURT:  We're outside the presence of the jury.

17             When we discussed this issue at side bar, Mr. Storey

18   distinguished two sorts of paperwork.  One was apparently a

19   narrative written by his client of what had occurred.  And

20   Mr. Morales has just testified that he referred to that in

21   refreshing his recollection prior to testimony.  And Mr. Storey

22   agreed and the Court agrees that the prosecutor is entitled to

23   review that.  The other was a communication between Mr. Morales

24   and Mr. Storey that had to do with theories of the case and

25   Mr. Storey contends is privileged attorney/client communication.

619

COPY

1          MR. STOREY:   Correct.

2          THE COURT:   And Mr. Storey is stating that Mr. Morales

3    did not refer to that in refreshing his recollection prior to

4    testimony.

5          Mr. Baker.

6          MR. BAKER:   Your Honor, I'm satisfied with Mr. Storey's

7    representations.

8          THE COURT:   All right.   Then we'll give you an

9    opportunity to review that.

10          (Recess.)

11          (The following proceedings were held in

12          the presence and hearing of the jury:)

13          THE COURT:   We're back in session in the Morales case

14    with all parties as previously identified.   All jurors are present

15    as well.   Mr. Baker was conducting cross-examination.

16          Mr. Baker.

17          MR. BAKER:   Thank you.

18    BY MR. BAKER:

19      Q.   Inmate Morales, you testified a few moments ago that you

20    never made eye contact with Officer Romero, correct?

21      A.   I never looked into her eyes, no.

22      Q.   Did you make eye contact with her?

23      A.   No.

24      Q.   But you said another time, didn't you, that you remember

25    Romero looking right at you?

COPY

1    A.    I remembered her looking at me, but I didn't see her

2  look back at me.

3    .Q.    How could you tell she was looking at you?

4    A.    I'm standing here.  I can tell you are looking at me,

5  you know.

6    Q.    You described earlier for the jury what you were

7  wearing.  What did you say you were wearing up here?

8    A.    When I came in from the yard, I had on a sweatshirt,

9  white T-shirt and sling-shot white shirt.

10    Q.    But that is not what you had on when you got sprayed?

11    A.    When I was in the dayroom, I took off my sweater and

12  white T-shirt.

13    Q.    And you only had a sling shot on?

14    A.    Sling shot.

15    Q.    When -- which is a tank top?

16    A.    A shirt.  Tank top.

17    Q.    Muscle shirt?

18    A.    Yeah, undershirt.

19    Q.    And your shoulders are exposed?

20    A.    Yes, sir.

21    Q.    When you got sprayed in the face and head, there was no

22  clothes protecting your shoulders, correct?

23    A.    No.

24    Q.    You said today, before the jury, that you got in line

25  because you wanted to ask Officer Rhoads for a shower?

621

COPY

1      A.   I was going to ask him for a shower and a few other

2   questions.

3      Q.   Oh, a few other questions.

4           And a few other questions would involve something I'm

5   about to ask you about, correct?

6      A.   I don't know what you are asking to ask me.

7      Q.   You testified earlier you were in line because you

8   wanted a shower, you missed it at 4:00?

9      A.   Yeah.

10      Q.   You wanted to talk to Officer Rhoads about getting a

11   shower?

12      A.   I -- in getting in line, I wanted to talk to him about

13   other things, things that happened earlier.

14      Q.   You were only in the line for a second?

15      A.   I was in the line briefly.  I can't recall the exact

16   time.

17      Q.   On a prior occasion you made a different statement.

18   That statement was that you got in line, you knew that if you

19   missed your shower at 4:00, you couldn't have a shower until 8:00.

20   You got in line to ask him for a bag; isn't that correct?

21      A.   I never made that statement.

22      Q.   But you said it before, didn't you?

23      A.   No.  I said it before -- previously, that if you miss

24   your shower at 4:00, you can come in at 8:00 and get one.  I was

25   going to ask Officer Rhoads for plastic to cook food in.

622

COPY

1     Q.   You said that in the document I looked at?

2     A.   Right.

3     Q.   You also said that you couldn't get a shower at 8:00 if

4 you missed your shower at 4:00 in that document?

5     A.   No.  If you miss your shower at 4:00, you can get your

6 shower at 8:00.

7     Q.   I know that is your testimony today.  What I'm asking

8 you, you said in a document that I just looked at you can't get a

9 shower at 8:00.

10    A.   I don't remember verbatim.  Let me look at it.

11    Q.   Sure.  Maybe this will refresh your recollection.

12        I'm directing you down to the bottom five or six lines,

13 Mr. Morales.

14    A.   Here?

15    Q.   Yeah.

16    A.   It appears that is what I wrote, that is just an error

17 on my part.  That is just chicken scratch.  I scratched that up

18 before I came to court.

19    Q.   And you wanted to get a bag -- let me ask you, is that

20 true that you wanted to get a bag from Officer Rhoads?  Is that

21 part true?

22    A.   That's true.

23    Q.   You wanted a bag for what?

24    A.   To cook food in.

25    Q.   Okay.  What other things?  You said you wanted other

COPY

```
 1   things from him, too.

 2        A.   I was going to talk to him.  My main purpose for getting

 3   into that line, because I didn't want Officer Rhoads to see me go

 4   to the shower and call me on it, like, "Why aren't you listening

 5   to me?"  I didn't want a conflict with him.  He already told me

 6   earlier about running around the dayroom.  If I miss a shower at

 7   4:00 -- he is the one that told me to go home earlier that day.  I

 8   missed my shower because he told me to go home.  That is the

 9   purpose of that.  I told him I needed my shower, and to ask him

10   for a bag.

11        Q.   Anything else?

12        A.   Not off -- I can't recall exactly what I was -- I know I

13   was going to ask him for a bag as well.

14        Q.   You had eaten dinner at 6:00 that night, correct?

15        A.   Yes, sir.

16             MR. BAKER:  If I could have just a minute, your Honor.

17             THE COURT:  Yes.

18             (Pause in the proceedings.)

19   BY MR. BAKER:

20        Q.   Showers are important to inmates, aren't they?

21        A.   Yes, sir.

22        Q.   In fact, you wanted to take a shower at 4:00, when

23   instead you were talking to somebody and you got counseled and

24   pulled into the sally port; is that correct?

25        A.   That is what I was in the dayroom for was to take a
```

COPY

1    shower.

2        Q.   That is why you didn't get your shower?

3        A.   I didn't get a shower at 4:00.  I was moving around

4    instead of getting in the shower like I should have been.  That

5    was my fault.

6        Q.   I want to get a little more specific with you,

7    Mr. Morales.

8             Isn't it true that you are the same Armondo Morales that

9    was convicted in Los Angeles County -- I'm sorry -- San Bernardino

10   County for first-degree residential burglary on May 4th, year

11   2000; is that correct?

12       A.   Yes.  When I was about 16, I was convicted of that, like

13   I mentioned earlier.

14       Q.   You are the same Armondo Morales who was convicted of

15   second-degree robbery in San Bernardino County on May 4th, year

16   2000?

17       A.   Unfortunately, yes.

18       Q.   Yes, unfortunately.

19            You are the same Armondo Morales that was convicted of

20   another count of second-degree robbery on May 4th, year 2000; is

21   that correct?

22       A.   Yes, sir.

23            MR. BAKER:  No further questions, your Honor.

24            THE COURT:  Any redirect, Mr. Storey?

25            MR. STOREY:  Very briefly, your Honor.

EXHIBIT D

COPY

1   got in a line where the inmates from the dayroom were supposed to

2   be.  He wasn't supposed to be in that line that day.  So why did

3   he get in that line?  It's a great question.  He testified there

4   were two lines.  Everybody else testified there was one line.  I

5   don't think that really matters.  I think what matters is why did

6   Inmate Morales get in that line?

7           But we know he did and that was established by his

8   own testimony and by the testimony of the officers.

9           The question is, why was he in that line?  I think he

10  was in that line because he was preparing to attack Officer

11  Rhoads.

12          Officer Romero made eye contact with Morales.  And

13  as you recall, she thought it was odd that Morales was in the

14  line.

15          Now, Inmate Morales originally told you before he knew

16  that I was going to get to take a look at that piece of paper,

17  that he didn't know I was going to get to take a look at, he told

18  you, "I didn't make any eye contact with Officer Romero."  Then

19  you recall I questioned him after our little recess and suddenly

20  he said something like, "Well, I knew she was looking at me

21  because I have peripheral vision."  Something like that.

22          Officer Romero saw Inmate Morales, and Inmate Morales

23  knew, I think, the evidence is -- a reasonable inference from the

24  evidence is that he knew when Inmate Romero (sic) made contact

25  with him, he knew that he shouldn't be in that line.  She was

718

COPY

1    Certainly the Defense called a lot of witnesses.  But ask

2    yourself, what did they say?  What evidence do I have to backup an

3    alternate theory?  Zero.  None.  Speculation.

4            Do not base your verdict on mere speculation.  Base

5    it on testimony and photographs and things that are received into

6    evidence.

7            In the People's case, we have the defendant

8    present.  In the People's case, we have eyewitnesses.  In the

9    People's case, we have a defendant with a motive.

10           In the Defense's case, Inmate Morales is on this stand

11   telling you his story.  If you believe him, as you watched him

12   testify, as you listen to his inconsistent statements, at least

13   near the end of his testimony, if you believe Inmate Morales, you

14   can render a not guilty verdict.  If you do not believe that he

15   got up here and told you the truth, then you can disregard

16   everything the Defense says and render that guilty verdict.

17           MR. STOREY:  I think that misstates the law, your

18   Honor.

19           THE COURT:  Overruled.  This is argument.

20           Go ahead.

21           MR. BAKER:  When you are thinking about Inmate

22   Morales, please recall his testimony.  He said a few things that

23   were very interesting that I want to focus on briefly, and then

24   I'll close.

25           He told you that he got in line to ask Officer

723

COPY

1   Rhoads for a shower.  That makes sense.  He told you there is two

2   things inmates can do if they want to shower; put the towel on

3   their door or talk to an officer.  Why did he choose to talk to an

4   officer instead of putting a towel on the door?  More importantly

5   than that, was it the truth?

6         If you recall, after I had a chance to look at what

7   Inmate Morales refreshed his recollection with before trial, he

8   said before, "I can't have a shower day if I missed it at 4:00,

9   and I missed it at 4:00 because of him, and showers are important

10   to inmates."

11         He also said, after I questioned him about the

12   document I reviewed, that there are other reasons why he got in

13   line.  He didn't tell us here before I had knowledge of the

14   document that there was another reason.  He said, "I just got in

15   the line to ask him for a shower," ladies and gentlemen of the

16   jury.  Then I had a chance to look at that document, and I got to

17   question him a little bit.  Then he said, "Well, there were some

18   other things, too.  I wanted to ask him for a bag."  But there was

19   more than that.

20         There was one statement that I think is really telling.

21   Honest.  Someplace here.  I questioned him about his earlier

22   testimony, and I ask him, "You testified earlier you were in line

23   because you want a shower you missed at 4:00?"

24         And he said, "Yeah."

25         "You wanted to talk to Officer Rhoads about getting

COPY

1   a shower?"

2           "I, in getting in line, I wanted to talk to him

3   about other things.  Things that happened earlier."

4           That is your clue, isn't it?  That is what happened

5   earlier.  What happened earlier is Officer Rhoads was counseling

6   him.  He was in that line for one reason only, he had been

7   thinking about it for hours after it happened.  He was in that

8   line to seek revenge for what happened to him for that counseling

9   for missing the shower.  I think that statement he made is very

10  telling.  He didn't tell you that when he first got on the stand.

11          He also didn't tell you he made eye contact with

12  Officer Romero when he first got on the stand.  He said, "I didn't

13  see her."

14          I said, "Well, you said something else before,

15  didn't you?"  I got somewhat of a concession that he made eye

16  contact with Officer Romero.

17          You are going to have to decide in this case what you

18  are going to base your verdict on.  I'm going to ask you to base

19  your verdict on the evidence.  I'm going to ask you to base your

20  verdict on the pictures, testimony, on reasonable interpretation

21  of the facts.  I'm going to ask you to reject speculation.  And

22  I'm going to ask you to reject interpretations of the facts that

23  don't make sense and that are unreasonable.  I'm going to ask you

24  to return a verdict of guilty on both counts because those are the

25  only verdicts that are supported by the evidence in this case.

COPY

1    I want you to be aware of the message being sent to
2    you.  You can make your own determination as to whether you think
3    they are lying.
4    Mr. Storey said, "It's obvious everybody didn't get down
5    because there is nobody in front of the podium."  Everybody knows
6    this picture was taken after the event.  And nobody testified that
7    anybody moved around, at all, after all of the inmates went down.
8    He tried to imply -- he was being really nice -- we
9    all really like Mr. Rhoads.  He was, in my view, trying to make it
10    appear that he didn't remember anything.  Mr. Rhoads' testimony
11    was very clear about everything that happened that day and
12    consistent with all of the other witnesses.  He doesn't remember
13    what happened after he got knocked out.  But he didn't ever say,
14    nor did anything in his testimony cause us to believe that he
15    didn't remember all of the events that happened beforehand.  He
16    was very clear.
17    The counselling, conversations, what happened,
18    everything that happened before.  And I don't recall him telling
19    us about somebody jumping over the podium at him right before he
20    went out.  That is a ridiculous story, and I hope you reject it.
21    Then he said to you, "Armondo had no
22    inconsistency."  He stood up here and said to you, "My client had
23    no inconsistencies in his testimony whatsoever."  Is that what you
24    recall?  He didn't until I had an opportunity to look at the
25    document that I didn't know existed, until the Court ordered it

748

COPY

1   turned over.  In that document, I asked him about several

2   inconsistencies that he left out after he an opportunity to hear

3   all of the testimony and craft his testimony to make sure it

4   didn't conflict or it made sense in the context of the testimony

5   that had already been produced by the witness.

6              Your duty is to reject the unreasonable

7   interpretation of the facts.  It is unreasonable to think that

8   somebody right next to Officer Romero, jumped over and attacked

9   Officer Rhoads and nobody saw that defendant here because he had

10  to be in the out-of-bounds line attacking him.  And that Romero

11  runs over here and arrests Armondo Morales.

12             And nobody sees the attacker.  Davis doesn't see him.

13  He is a mystery man.  Nobody sees him.  Where does he come from?

14  From the imagination of the defendant and his attorney.  Only

15  person who has been in this story and everybody describes is

16  Armondo Morales.  Armondo Morales.  The guy standing here when the

17  event happened.  The guy Officer Davis witnessed attack Officer

18  Rhoads.  Any other interpretation of the facts is unreasonable.

19  If that's the case, you have a duty to render a guilty verdict.

20             Mr. Storey said it would be an injustice.  Not to

21  compound the injustice, the injustices that happened to Officer

22  Rhoads.  Don't compound it by convicting him.  I'm telling you,

23  don't compound the injustice that happened to Officer Rhoads by

24  freeing this man.  See him guilty.  And that is how you should

25  vote.  That's the verdict I'm asking you to return.  Thank you.

EXHIBIT E

STATE OF CALIFORNIA

DEPARTMEN **COPY**

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

| | Location: | Institution/Parole Region | Log No. | | Category |
|---|---|---|---|---|---|
| | 1. _____ | | 1. _____ | | |
| | 2. _____ | | 2. _____ | | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| MORALES, A | P80813 | ASU | C6 188 |

**A. Describe Problem:** I HAD THE CHANCE TO make An emergency Phone CAll & my mother informed me she sent Numerous letters to me & That some of my friends have done the same & This was over A month Ago. I Asked my Sgt. Valenzuela who to get At & He informed me to write to the mail room of An informal 602. if 'my mail is Being mis-handled or mis-placed Or Detoured I weld Like you to check in to it please I'm colo in B-pod (C-6) Recieved Two of my open letters tucked inside One of his personal letters. That sounds like Its being tampered w/ Recause The letters came from two different places.

If you need more space, attach one additional sheet.     (NOTE: I never recieved these said letters mentioned Above!)

**B. Action Requested:** For this to be looked into & if my mail is being Detoured to whom - So I can 602 them. Also to get this Documented. Thank-You

Respectfully Submitted

Inmate/Parolee Signature: _____ Date Submitted: 11/09/03.

**C. INFORMAL LEVEL** (Date Received: 11-12-03     )

Staff Response: Partially Granted due to your request to research the routing of your mail. All mail received is processed and then forwarded to its designated area for delivery according to the written address on the envelope by the sender. If no housing is written on the address, the mailing address of the inmate (cell) is located/looked up on an inmate housing locator computer. Officers who deliver the mail should verify the inmate's name & number before leaving the mail to an inmate. Per Title 15, Section 3147(E) an inmate is responsible for informing the party's who are writing to them the change of address

Staff Signature: D.C. Johnny Sgt.     Date Returned to Inmate: 11/13/03

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____     Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed     CDC Appeal Number:

Board of Control form BC-1E, Inmate Claim

**COPY**

First Level   ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____   Due Date: _____

Interviewed by: _____

_____

_____

_____

_____

_____

Staff Signature: _____   Title: _____   Date Completed: _____
                                                              Returned
Division Head Approved:
Signature: _____   Title: _____   Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

Signature: _____   Date Submitted: _____

Second Level   ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____   Due Date: _____
☐ See Attached Letter

Signature: _____   Date Completed: _____

Warden/Superintendent Signature: _____   Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____   Date Submitted: _____

For the Director's Review, submit all documents to:  Director of Corrections
                                                     P.O. Box 942883
                                                     Sacramento, CA 94283-0001
                                                     Attn: Chief, Inmate Appeals

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DIRECTOR'S ACTION:   ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____
☐ See Attached Letter
                                                     Date: _____

CDC 602 (12/87)

COPY

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category

1. _____ CEL-C _____    1. _____ 04-0319 _____    3

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| MORALES ARMANDO | T-80873 | SSU. O.T.C. OOR | C611.8R |

A. Describe Problem: FOR A LONG TIME I'VE HAD PROBLEMS WITH MY MAIL & I FILED 602's BEHIND THAT. NOW I.G.I. HILL TOLD ME MY MAIL WAS BEING READ (THOUGH I KNOW NOT MINE) AND TODAY 02/13/04 I RECIEVED ▓ LEGAL MAIL THAT WAS OPENED PRIOR TO ME RECIEVING IT. THERE WAS A STAMP "OPENED IN ERROR" ON IT. NOW C/O L. GARCIA SEEN THIS & IT WAS DOCUMENTED IN THE LOG. I DONT UNDERSTAND HOW LEGAL MAIL STAMPED "CONFIDENTIAL" - PROCESSED SEPERATLY FROM REG. MAIL CAN BE ACCIDENTLY OPENED. IT JUST SO HAPPENS IM GOING TO TRIAL FOR STAFF ASSULT & NOW MY LEGAL MAILS BEING READ ▓ ▓ ! THIS IS THE 2nd PIECE OF LEGAL MAIL I'VE RECIEVED

If you need more space, attach one additional sheet.    OPEN SINCE I'VE BEEN HERE GOING TO COURT.

B. Action Requested: THAT THIS BE INVESTIGATED THOROUGHLY. HOW CONFIDENTIAL MAIL IS OPENED IN ERROR IS BEYOND ME. THATS A CRIMINAL ACT OR "ERROR" BY A STAFF WHICH IS UNACCEPTABLE. IT'S INITIALED "D.B." I WOULD LIKE THE CULPRIT TO HAVE A FORMAL COMPLAINT PLACED IN HIS/HER FILE, & FOR THIS TO BE DOCUMENTED. THANK YOU.

Inmate/Parolee Signature: _____    Date Submitted: 2/13/04

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number: _____
Board of Control form BC-1E, Inmate Claim

First Level    ☐ Granted    ☐ P. Granted    ☑ Denied    ☐ Other _____

**COPY**

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _MAR 31 2004_    Due Date: _APR 2004_

Interviewed by: _SERGEANT B. Comp?_

_Inmate will continue to Appeal_

_____

_____

_____

_____

_____

Staff Signature: _____    Title: _SERGEANT_    Date Completed: _3/24/04_

Division Head Approved: _____    Title: _A.W._    Returned _APR 20 2004_

Signature: _____    Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

Second Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____    Due Date: _____

☐ See Attached Letter

Signature: _____    Date Completed: _____

Warden/Superintendent Signature: _____    Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

.................................................................

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

☐ See Attached Letter

Date: _____

CDC 602 (12/87)

CONT. PART (A)

COPY

I RECIEVED A LETTER FROM THE APPEALS (CONFIDENTIAL) DIRECTOR, WHICH WAS OPENED PRIOR TO ME OPENING IT - THAT WAS DOCUMENTED IN THE LOG ALSO! AT THAT TIME I DIDN'T PAY NO MIND, THOUGHT IT WA - FLUKE. NOW ANOTHER ONE IS RECIEVED IN THE SAME ILLEAGI MANNER. SEN. ROMERO'S OFFICE HAS BEEN CONTACTED GOVERN NG THIS AND OTHER ISSUES, SO HAS MY LAWYER & HE WILL SUBSEQUENTLY APPRAISE THE COURT OF THE MAIL ROOM'S - CRIMINAL "ACCIDENTS". - MAIL TAMPERING!

COPY



*Law Offices Of*
**ANDERHOLT & STOREY**
*A Professional Law Corporation*
654 MAIN STREET
EL CENTRO, CALIFORNIA 92243



CENTINELA STATE PRISON
FEB 13 2004
RECEIVED

SAN BERNARDINO CA 924
11 FEB
2004

LEGAL AND CONFIDENTIAL MAIL

Armando Morales, CDC # P-80673
CSP-CEN-Ad., Seg.
CG-188
PO BOX 921
Imperial, CA 92251

C6-188

OPENED IN ERROR
GEN MAILROOM
DATE 2-13-04
BY

EXHIBIT F

COPY

1   circumstances lined up for Armondo to be charged.

2           Did he do anything illegal that day? I won't say

3   wrong because he did something wrong, clearly he did something

4   wrong that day. Did he do anything illegal that day? No.

5           Mr. Baker says you shouldn't believe Armondo

6   because he didn't tell you that there was more than one reason he

7   got in the line. Anybody's husband or wife ask them to do

8   anything? My wife asks me to take out the trash. Why would I

9   take out the trash? I take out the trash because my wife asked me

10  to take out the trash. I also take out the trash because I don't

11  want my wife to get upset with me. I also take out the trash

12  because it's full. I also take out the trash because I don't want

13  it to smell in the house. So is it unusual for somebody who has

14  had no training, and there is no evidence that Armondo had any

15  training on testifying when asked, why did you get the line, would

16  give you one of the multiple reasons why he got in the line? No.

17          Mr. Baker would have you believe that Armondo knew

18  he couldn't take a shower. Armondo did not say that. He said he

19  came in an hour early, got in line an hour early at eight o'clock.

20  He could have stayed out until 9:00. He said he went in because

21  they do take showers.

22          In his written statement to me that the D.A. was

23  able to go through, there was a word "not" and asked about whether

24  or not he said that. Armondo said, "Yeah, that is what I wrote.

25  That is not what I meant." Check the transcript. That is what he

738

EXHIBIT G

804 TO RECORDS ON: 3/5 BY: Gutierrez

STATE OF CALIFORNIA
**RULES VIOLATION REPORT**

*(handwritten:) Reserve/Rehear/classifying as serious after 180's is 7/6/02 Reserve/Rehear Classify Employ as serious*

DEPARTMENT OF CORRECTIONS

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| P80673 | MORALES | BPRD 11-2-04 | CENTINELA | B1-226L | FB-02-02-057 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR §3005(c) | ATTEMPTED MURDER ON A PEACE OFFICER | FAC. B BUILDING 1 | 2/23/02 | 2005 HOURS |

CIRCUMSTANCES

On Saturday, February 23, 2002, at approximately 2005 hours, Inmate Morales, P80673, B1-226L, attempted to murder Officer Rhoads, Facility B1 Floor Officer #1. Inmate Morales attacked him with such malice and forethought, that after the attack, Officer Rhoads laid unconscious in a pool of blood with multiple facial fractures. During the 2000 hour yard inline, Inmate Morales approached Officer Rhoads from behind as he sat by the podium, and struck Officer Rhoads in the right facial area with closed fists. Officer Rhoads fell at an angle, from right to left, striking the edge of the podium with his face. After this, Officer Rhoads laid unconscious on the ground and a pool of blood formed around his head. Inmate Morales then stood over Officer Rhoads and watched him as he laid on the ground. At that moment Officer E. Romero, Facility B1 Floor Officer #2, ordered Inmate Morales to "get down." Inmate Morales ignored her order, and continued standing over Officer Rhoads. Using her state issued Oleoresin Capsicum Solution (O.C.), she sprayed Inmate Morales in the facial area, utilizing a 1-2 second burst. Inmate Morales complied and assumed a prone position, and Officer Romero placed Inmate Morales into handcuffs. Inmate Morales is not a participant in the Mental Health Service Delivery System at the CCCMS/EOP/MHCB level of care. Inmate Morales is aware of this report.

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ D. DAVIS, Correctional Officer | 3/5/02 | B1 CONTROL OFFICER | TH/F |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | LOC. |
|---|---|---|---|
| ▶ C. McWILLIAMS, Sergeant | 3-5-02 | N/A | N/A |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☑ SERIOUS | A-1  180-369 | 3/5/02 | ▶ ARMANDO FAVILA, Facility Captain | ☐ HO  ☑ SHO  ☐ SC  ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| ☒ CDC 115 | ▶ F. Gutierrez | 3/5/02 | 2020 | 7219 S |

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|---|---|---|
| ☒ INCIDENT REPORT LOG NUMBER: FB1-02-02-0051 | ▶ F. Gutierrez | 3/5/02 | 2020 | ▶ F. Gutierrez | 3/5/02 | 2020 |

HEARING

This hearing convened on 06-29-02, at approximately 1530 hours, I introduced myself to inmate MORALES as the Senior Hearing Officer. This Inmate is not a participant in the Mental Health Service Delivery System at the CCCMS/EOP/MHCB level of care. Inmate MORALES stated his health is good, with unimpaired hearing and/or vision. He was assigned a Staff Assistant. Inmate MORALES acknowledged receipt of this CDC-115 RVR and the following associated documents CDC-115A; Investigative Employee's Report; 837 Crime Incident Report more than 24 hours prior to the hearing. These reports as well as the disciplinary charge of ATTEMPTED MURDER ON A PEACE OFFICER were reviewed with inmate MORALES at this hearing. Inmate MORALES stated that he understood all documentation and was prepared to begin. The Senior Hearing Officer suspended this hearing on 06-29-02, at 1600 hours, for the purpose of reviewing the documents as this SHO classified the RVR. After careful consideration this hearing reconvened on 06-29-02 at 1930 hours.

DUE PROCESS: This disciplinary was served to Inmate MORALES within 15 days of discovery and the hearing was held within thirty days of ~~service~~. Time constraints have been met. There are no due process issues.
*(handwritten:) REVOKING POSTPONEMENT.*

DISTRICT ATTORNEY: This matter was referred for felony prosecution.

REFERRED TO ☐ CLASSIFICATION   ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| G.N. Granish, Correctional Lieutenant | | 7/6/02 | 1600 |

| REVIEWED BY (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| ▶ ARMANDO FAVILA, CAPTAIN  *CAPT (A)* | 7-14-02 | ▶ SALAZAR, A/W COMPLEX I | 7/6/02 |

☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING

| | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|
| | ▶ | | |

CDC 1 15 (7/88)

EXHIBIT H

**COPY**

AMENDED

804 TO RECORDS ON: 7/2/12 BY: Holmes

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| P80673 | MORALES | | EPRD 11/2/04 | CENTINELA | B1-226L | FB-02-02-057 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS BATTERY ON A PEACE | LOCATION FAC. B | DATE | TIME |
|---|---|---|---|---|
| CCR §3005(c) | OFFICER WITH SERIOUS INJURY | BUILDING 1 | 02/23/02 | 2005 HOURS |

CIRCUMSTANCES On Saturday, February 23, 2002, at approximately 2005 hours, Inmate Morales, P80673, B1-226L, attempted to murder Officer Rhoads, Facility B1 Floor Officer #1. Inmate Morales attacked him with such malice and forethought, that after the attack, Officer Rhoads laid unconscious in a pool of blood with multiple facial fractures. During the 2000 hour yard inline, Inmate Morales approached Officer Rhoads from behind as he sat by the podium, and struck Officer Rhoads in the right facial area with closed fists. Officer Rhoads fell at an angle, from right to left, striking the edge of the podium with his face. After this, Officer Rhoads laid unconscious on the ground and a pool of blood formed around his head. Inmate Morales then stood over Officer Rhoads and watched him as he laid on the ground. At that moment Officer E. Romero, Facility B1 Floor Officer #2, ordered Inmate Morales to "get down." Inmate Morales ignored her order, and continued standing over Officer Rhoads. Using her state issued Oleoresin Capsicum Solution (O.C.), she sprayed Inmate Morales in the facial area, utilizing a 1-2 second burst. Inmate Morales complied and assumed a prone position, and Officer Romero placed Inmate Morales into handcuffs. Inmate Morales is not a participant in the Mental Health Service Delivery System at the CCCMS/EOP/MHCB level of care. Inmate Morales is aware of this report. This RVR is ordered re-issue/re-hear by J. Salazar on 7/16/02. This order is due to the fact that the Staff who classifies the CDC-115 shall not serve as the Disciplinary Hearing Officer. This RVR is being amended so the specific act in the RVR matches with the specific act on the 837 Crime/Incident Report, Battery on a Peace Officer with Serious Injury. This amendment does not prejudice Inmate Morales as both violations are A-1 offenses.

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| D. DAVIS, Correctional Officer | 7-23-02 | B1 CONTROL OFFICER | TH/F |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | | |
|---|---|---|---|---|
| C. McWILLIAMS, Sergeant | 7-22-02 | DATE N/A | LOC. N/A | |

| CLASSIFIED | OFFENSE DIVISION: | DATE: | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE | A-1 | 7/22/02 | ARMANDO FAVILA, Facility Captain | ☐ HO  ☒ SHO  ☐ SC  ☐ FC |
| ☒ SERIOUS  B1-3 | | | | |

| COPIES GIVEN INMATE BEFORE HEARING | | | | | | |
|---|---|---|---|---|---|---|
| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) T. Holmes | DATE 7/23/02 | TIME 1025 | TITLE OF SUPPLEMENT CDC 7219 Medical Report | | |
| ☐ INCIDENT REPORT LOG NUMBER: -FB1-02-02 | BY: (STAFF'S SIGNATURE) 0051  T. Holmes | DATE 7/23/02 | TIME 1025 | BY: (STAFF'S SIGNATURE) T. Holmes | DATE 7/23/02 | TIME 1025 |

HEARING This hearing convened on 8/01/02, at approximately 1645 hours, I introduced myself to Inmate Morales as the Senior Hearing Officer. This Inmate is not a participant in the Mental Health Services Delivery System at the CCCMS/EOP/MHCB level of care, he was not assigned a Staff Assistant. Inmate Morales stated that his health was pretty good with unimpaired hearing and/or vision. Inmate Morales acknowledged receipt of this CDC-115 and the following associated documents; CDC-115A, Investigative Employee Report, CDC 837 Crime/Incident Report; more than 24 hours prior to the hearing. These reports as well as the disciplinary charge of BATTERY ON A PEACE OFFICER WITH SERIOUS INJURY were reviewed with Inmate Morales at this hearing. Inmate Morales stated that he understood all documentation and was prepared to begin.

DUE PROCESS: This disciplinary was served to Inmate Morales within 15 days of discovery and the hearing was held within thirty days of service. Time constraints have been met. There are no due process issues.

DISTRICT ATTORNEY: This matter was referred for felony prosecution. Inmate Morales did not request this hearing postponed pending outcome of the referral.

| REFERRED TO ☐ CLASSIFICATION  ☐ BPT/NAEA | | | |
|---|---|---|---|
| ACTION BY: (TYPED NAME) T. L. MARTINEZ, Correctional Lieutenant | SIGNATURE T.L.M. | DATE 8/07/02 | TIME 1415 |
| REVIEWED BY: (SIGNATURE) CAPT (A) | DATE 8-8-02 | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE 8/9/02 |

EXHIBIT I

COPY

STE #1

000001

**FILED**
4:25 pm
MAR 10 2004

SUPERIOR COURT
IMPERIAL COUNTY CA
LYLA CORFMAN CLERK
BY _____ DEPUTY

Reread Testamony of

Holmes

and

Davis

Foreperson

0   3-11-04
    4:25 PM

EXHIBIT J

VOTE # 2

COPY

000002

# FILED

9:50 am

MAR 1 2 2004

SUPERIOR COURT
IMPERIAL COUNTY CA
LYLIA COREMAN CLERK
DEPUTY

Re-read testimony
of
Gutierrez
&
Davis

3-12-04
9:50 AM

EXHIBIT K

ATE OF CALIFORNIA

**COPY**

DEPARTMENT OF CORRECTIONS
PAGE ___ OF ___

JLES VIOLATION REPORT - PART C

| IC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| P-80673 | MORALES | FB-02-02-0578 | CSP/CENTINELA | 07/23/02 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☒ IE REPORT ☐ OTHER___

Q by I/E (Officer F. Holmes) --- How long were you assigned to building #1 prior to the incident?
A by I/M (Morales) --- About a year.

Q by I/E --- Did you have any disagreement or problems with any staff prior to this incident?
A by I/M --- No.

Q by I/E --- Did you personally have any problem with Officer Rhoads?
A by I/M --- He counseled me the afternoon of the incident, but it was not a problem.

Q by I/E --- On Saturday, February 23, 2002, did you assault/attack Officer Rhoads?
A by I/M --- No I did not.

Q by I/E --- Do you know who attacked/assaulted Officer Rhoads?
A by I/M --- No, I do not.

Q by I/E --- Did you see what happened to him?
A by I/M --- No, I did not see what happened.  The alarm went off when I was standing by the stairs near B section of the dayroom.

Q by I/E --- Why did you assault/attack Officer Rhoads?
A by I/M --- I did not attack or assault him.

Q by I/E --- According to the written report by Officer D. Davis, you approached Officer Rhoads from behind and struck him in the face with a closed fist knocking him to the floor and you stood over him as he lay unconscious and bleeding. **Can you explain this?**
A by I/M --- No.

Q by I/E --- Do you want to make a statement about this incident?
A by I/M --- No.

Q by I/E --- Do you have any comments?
A by I/M --- None.

**REPORTING EMPLOYEE's STATEMENT:**  On 2/23/02, at approximately 2005 hours, during the 2000 hour yard inline Inmate Morales approached Officer Rhoads from behind as he sat by the podium and struck Officer Rhoads in the right facial area with closed fist.  Officer Rhoads fell at an angle, from right to left, striking the edge of the podium with his face.  While Officer Rhoads lay unconscious on the ground with a pool of blood around him, Inmate Morales stood over Officer Rhoads.

Inmate Morales submitted the following questions for Officer D. Davis:

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| CORRECTIONAL OFFICER F. HOLMES | | |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| *[signature]* | *[date]* | |

☐ --- COPY OF CDC 115-C GIVEN TO INMATE

EXHIBIT L

COPY

STATE OF CALIFORNIA

RULES VIOLATION REPORT - PART C                                      PAGE____OF____

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| P80673 | MORALES | FB-02-02-057R | CENTINELA | 8/01/02 |

☐ SUPPLEMENTAL   ☒ CONTINUATION OF:   ☐ 115 CIRCUMSTANCES   ☒ HEARING   ☐ IE REPORT   ☐ OTHER_____

**STAFF ASSISTANT:** Was not assigned. Inmate Morales is not illiterate (claims 12th grade education), can read and write, is English speaking, the issues are complex, he is not a participant in the Mental Health Services Delivery System, and did not require a confidential relationship in preparing his defense.

**INVESTIGATIVE EMPLOYEE:** Officer F. Holmes, was assigned, the issues are complex, his housing status did preclude his gathering of evidence, additional information was not necessary for a fair hearing. Rule Violation Report Log #FB-02-02-057 had been ordered re-issue/re-hear and the Specific Act was amended from "Attempted Murder on a Peace Officer" to "Battery on a Peace Officer with Serious Injury", and that the amended violation is also an A-1 offense. Inmate Morales informed the Investigative Employee that he did not want his hearing postponed and wanted it heard as soon as practical. Inmate Morales requested to have his original IE Report for the re-issue/re-hear with no additional information. Inmate Morales did not have a specific statement. He wanted to use the report from his previous hearing. Inmate Morales received a copy of the IE Report and had no objections to the report.

**PLEA:** Inmate Morales plead NOT GUILTY, and gave the following testimony as his defense: "The Officers that were involved lied on their statements."

**WITNESSES:** Inmate Morales requested the presence of Officer Davis and Inmate Gonzales, but waived the presence of previously requested witnesses and signed the CDC 115A, dated 8/01/02, accordingly.

**VIDEO TAPE:** Was not used for evidentiary purposes.     *There was no video tape.* A Worden

**FINDINGS:** Inmate Morales was found GUILTY as charged of violating California Code of Regulations, §3005(c), a Division "A-1" Offense; the specific charge of BATTERY ON A PEACE OFFICER WITH SERIOUS INJURY.
  The preponderance of evidence submitted and considered in reaching this finding substantiates the charge, and supports the factors in aggravation
This finding is based on the following:
A.  The Rules Violation Report written by Correctional Officer D. Davis which states, in part, On Saturday, February 23, 2002, at approximately 2005 hours, Inmate Morales approached Officer Rhoads from behind as he sat by the podium, and struck Officer Rhoads in the right facial area with closed fists, Officer Rhoads fell at an angle, from right to left, striking the edge of the podium with his face. Officer Rhoads laid unconscious on the ground and a pool of blood formed around his head. Inmate Morales then stood over Officer Rhoads and watched him as he laid on the ground.
B1. The CDC 837 Crime/Incident Report Log # FB1-02-02-0051 which states, in part, on Saturday, February 23, 2002, at approximately 2005 hours, Inmate Morales, P80673, B1-226L, battered Correctional Officer J. Rhoads, Facility B1 Floor Officer #1, causing him to lose consciousness and receive multiple facial fractures.
B2. While supervising yard inline, Officer Rhoads was approached by inmate Morales at the officer's podium. Morales battered Officer Rhoads by battering him with his fists. Officer

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| T. L. MARTINEZ, Correctional Lieutenant | | 8-07-02 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | 8/9/02 | 2106 |

EXHIBIT M

COPY

ATE OF CALIFORNIA                                                  DEPARTMENT OF CORRECTIONS
PAGE ___ OF ___

**JLES VIOLATION REPORT - PART C**

| IC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| U-55379 | GONZALES | FB-02-02-058 | CENTINELA | 04/24/02 |

☐ SUPPLEMENTAL   ☒ CONTINUATION OF:   ☐ 115 CIRCUMSTANCES   ☐ HEARING   ☒ IE REPORT   ☐ OTHER____

C/O Rhoads (B1 Floor Officer #1)
I/E Gonzalez Q:
1) How long have you known inmate Gonzalez and did both of you get along?
2) Did both of you have an understanding of what you expected of him as a MAC Rep.?
3) Was he ever disrespectful to you or C/O Givens?
4) On the day of the incident at 4:15pm, did you go to inmate Gonzalez's cell 219 and pulled him out to have a conversation with him by yourself?
5) Inmate L. Gonzalez says this is true that both of you had a mutual and friendly conversation without any arguments until yard recall. Is this true?
6) So if you went to his cell to pull him out by yourself. You must have not felt threatened by him. Is this true?
7) Do you actually believe that inmate MAC Rep. Gonzalez was a part of a conspiracy to assault you?
8) Did you actually hear both accused inmates plot or premeditate his assault?

 (IE: Due to the severity of the attack during the incident, Officer Rhoads is currently out on Workman's Comp, and he is unable to be contacted.)

C/O Davis (B1 Control Booth Officer):
1) I/E Gonzalez Q: Were you aware of the situation between the accused inmates and C/O Rhoads?
C/O Davis A: Yes.

2) I/E Gonzalez Q: Did you actually hear both accused inmates plot and premeditated the assault on C/O Rhoads?
C/O Davis A: No.

3) I/E Gonzalez Q: On the day of the incident at 4:15pm, did C/O Rhoads order you to open cell #219 where inmate Mr. Gonzalez lived?
C/O Davis A: No, I do not recall.

4) I/E Gonzalez Q: Did it appear to you that in fact Mr. Gonzalez and C/O Rhoads were having a mutual conversation?
C/O Davis A: Yes.

 (IE: I asked C/O Davis if he overheard any threats made to C/O Rhoads while Rhoads was counseling Inmate Morales. C/O Davis stated that he did hear the threat "were going to get you, Rhoads." But, C/O Davis could not identify who made the threat.)

| SIGNATURE OF WRITER A. Verkouteren, C/O | | DATE SIGNED |
|---|---|---|
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |

☐ COPY OF CDC 115-C GIVEN TO INMATE

EXHIBIT  N

COPY

DEPARTMENT OF CORRECTION

RULES VIOLATION REPORT - PART C

PAGE 03 OF ____

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| P-80673 | MORALES | FB-02-02-057R | CSP/CENTINELA | 07/23/02 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☐ HEARING  ☒ IE REPORT  ☐ OTHER _____

Q by I/M (Morales) — From your position in the tower are you able to hear conversations of the inmates you are observing?
A by C/O (DAVIS) — It depends on the location of the inmate(s) I'm observing?

Q by I/M — In your report, you did not mention any threats overheard by yourself, correct?
A by I/M — No, I did not mention any threats.

✱ Q by I/M — However, in your I.E. Report for Inmate Gonzalez you stated that you overheard unknown inmates make a threat against Officer Rhoads? You even quoted them, "We're going to get you Rhoads." Correct?
✱ A by C/O — That is not in my report.

Q by I/M — Officer Romero Reported a similar threat although, she stated that Inmate Gonzalez stated, "If you don't leave him (Inmate Morales) alone, you will get hit." You mentioned that you were aware of the counseling between Inmate Morales and officer Rhoads at 1500 hours, correct?
A by C/O — I'm not sure about the time, but I am aware of the counseling.

Q by I/M — That makes two different threats made against a Peace Officer, how come the inmates were not detained after Officer Romero reported what happened to you and why didn't you call the lieutenant to send the inmates to the hole.
A by C/O — There were no specific threats made.

Q by I/M — At the time of the attack, were there other inmates at the podium?
A by C/O — Yes, other inmates were at the front of the podium but you were at the rear of the podium near Officer Rhoads.

Q by I/M — At the time of the attack, you heard a loud knock through the intercom and you looked up to see Inmate Morales strike Officer Rhoads?
A by C/O — Yes, Inmate Morales struck Officer Rhoads and stood over him while ignoring orders to get down.

Q by I/M — Officer Romero heard the same knock and she also turned immediately around. However, she did not see Inmate Morales strike the officer. Is it possible you could be mistaken?
A by C/O — No. There is no mistake, I saw Inmate Morales batter Officer Rhoads.

Q by I/M — You stated you saw Inmate Morales strike Officer Rhoads "One time with a closed fist." Do you think it was the intention of the inmate to murder Officer Rhoads?
A by C/O — I didn't/don't know Inmate Morales's intention, but I know that Inmate Morales assaulted and battered Officer Rhoads.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| CORRECTIONAL OFFICER F. HOLMES | 7/25/02 |

| GIVEN BY (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | | 7-27-02 | 0915 |

EXHIBIT O



COPY
Centinela State Prison

# Memorandum

Date    :   March 6. 2002

MEMO OF "THREATS"

ARMANDO FAVILA
Correctional Captain
Facility B

Subject:   INVESTIGATION OF I/M GONZALEZ, H-55379

On Saturday, February 23, 2002, G. Guirbino, Warden, assigned an investigation to me into the Attempted Murder of Correctional Officer J. Rhoads. It is alleged by Officer Romero, E, assigned as Officer Rhoads housing unit floor partner, that Inmate **GONZALEZ**, H 55379, had made threatening remarks of physical harm to Officer Rhoads after he had verbally counseled Inmate **MORALES**, P-80673. Later that same night at approximately 2005 hours, Officer Rhoads was attacked by **MORALES**.

**MORALES** and **GONZALEZ** are currently assigned to Administrative Segregation (Ad/Seg) due to the attack on Officer Rhoads. On Wednesday, March 6, 2002, I contacted Officer Rhoads at his residence to inquire about inmate **GONZALEZ** and his role, from his vantage point, in the attack. And any conversation between **GONZALEZ** and him, which had taken place.

The following is a synopsis of the conversation:

The call was placed 1605 hours, Officer Rhoads stated that he did have a conversation with inmate **MORALES** about his negative attitude at or around 1500 hours. And after the counseling session, **MORALES** was receptive. While **MORALES** was being counseled, **GONZALEZ**, also the Men's Advisory Council (MAC) Mexican Representative, approached Officer Rhoads stating, "What are you doing to my people?, Why are you disrespecting my race?" With Officer Romero near him, Officer Rhoads ordered **MORALES** to "lock up (to go to his assigned cell)." Inmate **GONZALEZ** walked up to where Officer Rhoads was counseling **MORALES**. As **GONZALEZ** walked up to Officer Rhoads with Officer Romero standing closer to **GONZALEZ** as he approached, Officer Romero overheard **GONZALEZ** as he stated to Officer Rhoads, "If you don't leave him alone, you will get hit." **GONZALEZ** and **MORALES** then walked away from the officers and to

COPY

INVESTIGAION –INMATE GONZALEZ, H-55379
Page 2

**MORALES's** assigned cell. Both inmates walked to the cell. Before walking into the cell **GONZALEZ** and **MORALES** shook hands and **MORALES** walked into the cell and closed the cell door behind him. **GONZALEZ** then walked away from the cell door to the dayroom.

Officer Rhoads remembers conducting the release of inmates for the evening yard at 1900 hours. He also remembers conducting yard inline at 2000 hours. The next thing he remembers is waking up at 2105 hours at the hospital.

**GONZALEZ** is currently assigned to Ad/Seg for "Threats to staff resulting in an Attempted Murder on a Peace Officer." Copy of the Rules Violation Report Log #FB-02-02-058 is enclosed.

This closes my interest in this investigation.

G. N. GRANISH, Lieutenant
3/W, Facility B
Centinela State Prison

EXHIBIT P



# IMPERIAL COUNTY SUPERIOR COURT
## 939 W. MAIN STREET
## EL CENTRO, CA 92243
## (760) 482-4256

October 17, 2006

**Mr. Armando Morales**
**Re: Acceptance and Filing of Your Writ of Habeas Corpus Petition**

Your petition for Writ of Habeas Corpus has been accepted and filed on **10/17/2006.**

It has been assigned case **EHC 00801** and it is currently being reviewed by the presiding Judge Jones.

I am including an endorsed copy of the face sheet for your records.

Sincerely,

Veronica Lopez

**Veronica Lopez**
**Court Clerk I**

EXHIBIT Q

1

2

3

4

5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF IMPERIAL

10

11  In re:                                    Case No. EHC 00801

12  ARMANDO MORALES,
                                              **ORDER DENYING PETITION FOR WRIT OF**
13  On Habeas Corpus.                         **HABEAS CORPUS**

14

15

16      Petitioner, a prisoner incarcerated at Corcoran State Prison, challenges the lawfulness of

17  his conviction in Imperial County Superior Court Case No. CF12094 on the following grounds:

18  (1) Prosecutorial misconduct and, (2) ineffective assistance of counsel.  The petition is timely

19  filed.

20      Prosecutorial Misconduct.

21      Petitioner alleges that the prosecutor became aware of petitioner going over a document

22  with defense counsel in court; the prosecutor is alleged to have been approximately four feet

23  away at the time of the review of the document.  The prosecutor later asked petitioner on cross

24  examination if he had reviewed any documents in preparation for his testimony, whereupon

25  petitioner truthfully answered that he had gone over a self-prepared statement with counsel.

1

1       The court thereafter ordered the document produced for review by the prosecution, and

2    the document was used as a basis for impeachment of portions petitioner's testimony.

3       There is no allegation that the prosecutor obtained any confidential information prior to

4    the production of the document pursuant to the court's order.  At best, the petition alleges that

5    the prosecutor became aware of the potential *existence* of the document.  The existence of a

6    confidential communication between a client and counsel is not privileged under Evidence Code

7    §952.  There is no showing of misconduct.

8       Ineffective Assistance of Counsel.

9       The petition alleges, and the transcript confirms, that the trial court ordered petitioner's

10    statement turned over to the prosecution pursuant to Evidence Code §771, without objection by

11    defense counsel.  Petitioner alleges that the document was protected by the attorney – client

12    privilege, and that it was error for the court to order disclosure.  This court agrees with petitioner

13    for two reasons.

14       First, disclosure is not a remedy authorized by Evidence Code §771.  Where a refreshed

15    witness for any reason does not wish to produce a document used to refresh recollection, the

16    sole remedy authorized by the statute is the striking of the witness's testimony.  Evidence Code

17    §771(a).

18       Second, the document was privileged under Evidence Code §952.  Where, as here, a

19    client uses a privileged document to refresh the client's recollection, and the client testifies only

20    to the facts actually perceived by the client, the privilege is not waived.  *Sullivan v. Superior*

21    *Court* (1972) 29 Cal.App.3d 64.  Had defense counsel objected, the objection should have been

22    sustained.

23       However, the court finds that counsel's error in not objecting does not rise to the level of

24    ineffective assistance.  To show ineffective assistance, a defendant must show that he suffered

25    prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in

1 the outcome.  Counsel's failure to object rarely constitutes constitutionally cognizable ineffective

2 assistance.  *People v. Gray* (2005) 37 Cal.4th 168.

3      The transcript attached to the petition does show that petitioner's narrative statement was

4 used to impeach him on cross.  Specifically, the document was used to impeach petitioner's

5 testimony that he never made eye contact with the officer by reference to a portion of the

6 document wherein petitioner stated that he knew the officer was looking at him.  Also,

7 petitioner's direct testimony that if he missed a shower at 4:00 p.m. he would be able to take

8 one at 8:00 p.m. was impeached with his written statement that he *would not* be able to take a

9 shower at 8:00 p.m.[1]

10      The court finds that the prosecution's impeachment of petitioner on these points could not

11 have affected the outcome of the trial.   The points covered are not central to petitioner's guilt or

12 innocence, nor are they significantly damaging to petitioner's credibility.  Indeed, it appears that

13 the written statement was substantially in accord with petitioner's trial testimony, else a more

14 effective cross-examination would likely have been conducted.

15      The court finds no cognizable claim of ineffective assistance of counsel has been shown,

16 and the petition is DENIED.

17 DATED:  December 15, 2006

18

19 JEFFREY B. JONES
Judge of the Superior Court

20

21

22

23

24

25

---

[1] Petitioner explained on cross that this was an error in the written statement due to hasty drafting.

EXHIBIT R

# Court of Appeal

FOURTH APPELLATE DISTRICT
Division One
750 B Street, Suite 300
San Diego, CA 92101
www.courtinfo.ca.gov/courts/courtsofappeal
(619) 645-2760

February 21, 2007

RE:  In re ARMANDO MORALES on Habeas Corpus
     **D050319**
     **Imperial County No. CF12094**

Dear Petitioner:

    Your petition for writ of habeas corpus has been received and filed on February 20, 2007, and assigned case number D050319.  It is currently pending before the court.  You will be notified of the court's decision once it has been rendered.

    Please notify the court should you have a change of address.

STEPHEN M. KELLY, CLERK

BY: _Jean Cook_

Deputy Clerk

EXHIBIT 5

# Court of Appeal
FOURTH APPELLATE DISTRICT
Division One
750 B Street, Suite 300
San Diego, CA 92101
www.courtinfo.ca.gov/courts/courtsofappeal
(619) 645-2760

May 24, 2007

RE:    In re ARMANDO MORALES on Habeas Corpus
       **D050319**
       **Imperial County No. CF12094**

Dear Mr. Morales:

    The Attorney General has been asked to file a response to the petition for writ of habeas corpus on or before June 29, 2007. Petitioner may file a reply within 20 days of the filing of the response.

                                  STEPHEN M. KELLY, CLERK

                                  BY: _____
                                      Deputy Clerk

cc: All Parties

## AFFIDAVIT OF TRANSMITTAL

I am a citizen of the United States, over 18 years of age, and not a party to the within action; that my business address is 750 B Street, Suite 300, San Diego, CA 92101; that I served a copy of the attached material in envelopes addressed to those persons noted below.

That said envelopes were sealed and shipping fees fully paid thereon, and thereafter were sent as indicated via the U.S. Postal System from San Diego, CA 92101.

I certify under penalty of perjury that the foregoing is true and correct.

Stephen M. Kelly, Clerk of the Court

_____
Deputy Clerk

MAY 2 4 2007
_____
Date

CASE NUMBER: D050319

Office of the Clerk
Imperial County Superior Court - Main
939 West Main Street
El Centro, CA 92243

Material Sent YES: _____

Material Sent YES: _____

Armando Morales
CDC:P80673
PO Box 3481
4B-3R-36
Corcoran, CA 93212

Material Sent YES: _____

Office of the Attorney General
P. O. Box 85266
San Diego, CA 92186-5266

Material Sent YES: _____

Appellate Division
Office Of The District Attorney
940 Main Street, Suite 102
El Centro, CA 92243

EXHIBIT T

S155801

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

In re ARMANDO MORALES on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
**FILED**

MAR 1 2 2008

Frederick K. Ohlrich Clerk

_____
Deputy

Moreno, J., was absent and did not participate.

_____
GEORGE
Chief Justice

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. 1746)

I, _Armando Morales_____, declare that I am over 18

years of age and a party to this action. I am a resident of : _Corcoran State Prison_

_Corcoran CA._____,

in the County of : _Kings County_____,

State of California. My prison address is : _P.O. BOX 34B   4B-3R-25_

_Corcoran CA. 93212_____

_____

_____

On _April 9th___, 20_08_, I served the attached : _Petition for Writ_

_of Habeas Corpus_____

(Describe Document)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope , with

postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named

Correctional Institution in which I am presently confined. The envelope is addressed as follows :

_Southern District of California_     _Edmund Brown_
_San Diego_                           _Attorney General_
                                      _San Diego Office_
_880 Front St. # 4290_                _110 W. A St. # 1100_
                                      _P.O. Box 85266_
_San Diego CA. 92101-8900_            _San Diego CA. 92186_
                                      _-5266_

I declare under penalty of perjury under the laws of the United States of America that the foregoing is

true and correct.

Executed on _April 9th 2008___          _Armando Morales_
(Date)                                  (Declarant's Signature)

JS44
(Rev. 07/89)

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**FILED** APR 16 2008

**FILING FEE PAID** Yes ☐ No ☐
**IFP MOTION FILED** Yes ☐ No ☐
**COPIES SENT TO** Court ☐ Pro Se ☐

**I (a) PLAINTIFFS**

Armando Morales

**(b) COUNTY OF RESIDENCE OF FIRST LISTED** Kings
**PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**

Darrel Adams, Warden, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Armando Morales
PO Box 3481
Corcoran, CA 93212
P-80673

**ATTORNEYS (IF KNOWN)**

'08 CV 0705 JAH PCL

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT** (For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

**28 U.S.C. 2254**

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appelate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $

Check YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE ___ Docket Number ___

DATE  4/16/2008

SIGNATURE OF ATTORNEY OF RECORD

R. Mell